IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNY L. PRICE and, <br> ROY R. PRICE, JR., <br>             Plaintiffs, <br> <br> v. <br> <br> GENERAL CABLE INDUSTRIES, INC., <br> International Union of Electronic, <br> Electrical, Salaried Machine and <br> Furniture Workers of America (IUE-CWA), <br>             Defendants. | CIVIL ACTION NO. 05-424J <br> <br> JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION and ORDER

**GIBSON, J.**

### INTRODUCTION and BACKGROUND

Now before the Court are two motions to dismiss the Amended Complaint (Document No. 16) of Penny L. Price ("Price") and Roy R. Price, Jr. (collectively, "Plaintiffs"). Defendants General Cable Industries, Inc. ("GCI") and IUE-CWA ("IUE" or "the Union") have separately moved to dismiss all claims under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Document Nos. 18 & 21, respectively). This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. Venue is proper in accordance with 28 U.S.C. § 1391(a) and (c).[1]

Price began employment with GCI on November 6, 1989, and from that date "was a member in good standing of IUE Local 123." Plaintiffs' Amended Complaint (Document No. 16), p. 1. As such, Price could not be terminated from her job absent a showing of "just cause pursuant to Article XV of the General Cable and IUE Article of Agreement. *Id.* at 2. Notwithstanding, Price alleges, GCI

---

[1]The Court notes that this case was removed from state court pursuant to 28 U.S.C. § 1441(b).

1

"discharged [her] against statutory, contractual and public policy" on November 1, 2004, following two justified medical absences. *Id.* Plaintiffs filed this suit in state court on October 18, 2005, alleging breach of contract and wrongful termination, discrimination, emotional distress, and loss of consortium. Exh. A attached to Notice of Removal (Document No. 1).

GCI removed the case to the District Court for the Western District of Pennsylvania on November 8, 2005. Document No. 1. Removal was based on 28 U.S.C. § 1441(b). Specifically, because Price's breach-of-contract claim requires the interpretation of a collective bargaining agreement ("CBA"), applicable state laws are preempted pursuant to section 301 of the Labor Management Relations Act. 29 U.S.C. § 185; *Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 450-51, 77 S. Ct. 912, 1 L. Ed. 2d 972, (1957) (holding that section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements"). Plaintiffs, who have been represented by counsel throughout this case, failed to oppose Defendants' subsequent Rule 12(b)(6) motions (Document Nos. 6 & 12), despite two orders from the Court directing responsive pleadings by specific dates (Document Nos. 10 & 14). In dismissing the case without prejudice, the Court therefore relied not only on Plaintiffs' inability to satisfy their obligations under Rule 12(b)(6), but also on the mandate of FED. R. CIV. P. 41(b) that failure to prosecute can lead to involuntary dismissal. Document No. 15, pp. 5-6.

On January 23, 2006, Plaintiffs timely filed their "amended" complaint (Document No. 16), which merely recites–practically verbatim–the same claims which had been set forth in the previously dismissed complaint. Count One demands judgment against GCI for breach of contract and wrongful termination. Document No. 16, pp. 2-3. Count Two alleges gender discrimination on the part of GCI. *Id.* at 3. Count Three seeks damages against GCI for the "medical and mental health treatment for [the]

2

depression, loss of sleep and mental distress and fatigue" that Price suffered. *Id.* at 3-4. In Count Four, Plaintiff Roy Price alleges loss of consortium against both GCI and IUE. *Id.* at 4.

GCI moved to dismiss the amended complaint on January 31, 2006 (Document No. 19). In its supporting brief (Document No. 18), GCI argues that

> (1) the breach of contract claim is preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA") and is barred by the applicable statute of limitations; (2) Pennsylvania courts do not recognize common law actions for wrongful discharge where specific statutory remedies are available; (3) Plaintiffs' Amended Complaint fails to allege any specific public policy that [GCI] allegedly violated; (4) Price failed to timely exhaust her administrative remedies with respect to her claim for gender discrimination prior to seeking redress in court; (5) Price has not alleged any conduct by [GCI] that was extreme and outrageous; and (6) Plaintiff Roy Price's loss of consortium claim is not based on any viable state tort action.

Document No. 18, p. 2. IUE filed its own motion to dismiss (Document No. 20) on February 8, 2006, arguing that Price's failure to allege any tort against IUE precluded her spouse from recovering against the Union for loss of consortium. Brief in Support of Motion to Dismiss (Document No. 21), p. 3. Plaintiffs have chosen to leave Defendants' motions unopposed.[2] The only action Plaintiffs have taken since filing their amended complaint was to move for a status/scheduling conference (Document No. 22). The Court denied that motion (Document No. 24), and, for the reasons stated herein, now grants with prejudice Defendants' motions to dismiss.

## ANALYSIS

### I. Applicable Standard

When analyzing a 12(b)(6) motion, the issue is not whether the plaintiffs will prevail at the end but only whether they should be entitled to offer evidence to support their claim. *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997); *Niami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). A court may only dismiss

---

[2] There was no order from the Court requiring a response.

3

a complaint if it is clear that relief could not be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1957). The Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943 (3d Cir. 1984). "In considering a rule 12(b)(6) motion, a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Steinhardt Group v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997).

## II. GCI's Motion to Dismiss

### A. Breach of Contract

As noted, the basis of the Court's jurisdiction is the federal preemption of state contract law when interpreting collective bargaining agreements. Any "suit for breach of a collective bargaining agreement may be brought either in federal or state court, but the applicable law in either forum is federal common law." *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 936 (3d Cir. 1985) (citing *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 101-04, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962)), *overruled on other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3d Cir. 1993). Because Price's claim for breach of the Article of Agreement between GCI and IUE necessarily involves interpreting all provisions governing the termination of covered employees, it will be decided according to federal common law.

GCI argues that Plaintiffs' original complaint was filed after the applicable six month statute of limitations had lapsed. Document No. 18, pp. 6-7. This limitations period is taken from § 10(b) of

4

the National Labor Relations Act, 29 U. S. C. § 160(b), which, according to the Supreme Court, requires that all "hybrid" claims be filed within six months of the alleged breach. *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154-55, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983); *see also Myers v. AK Steel Corp.*, 156 Fed. Appx. 528 (3d Cir. 2005) (nonprecedential opinion). Hybrid claims take their name from the proponent's joint allegation that an employer breached the CBA while the employee-plaintiff's union violated its duty to fairly represent the employee. Such claims amount "to a direct challenge to the private settlement of disputes under the collective-bargaining agreement." *DelCostello*, 462 U.S. at 165. *DelCostello* thus explicitly predicates the applicability of § 10(b) on the existence of a fair representation claim running parallel to the breach-of-contract claim.

*DelCostello* represents a narrow exception to the "standard borrowing rule," according to which a court applying federal common law under the LMRA borrows the "most suitable statute or other rule of timeliness from some other source." *Reed v. United Transp. Union*, 488 U.S. 319, 326, 109 S. Ct. 621, 102 L. Ed. 2d 665 (1989); *DelCostello*, 462 U.S. at 158. Lower courts are still bound by the Supreme Court's holding that federal common law under the LMRA borrows the state statute of limitations for actions between an employee and employer. *UPS v. Mitchell*, 451 U.S. 56, 101 S. Ct. 1559, 67 L. Ed. 2d 732 (1981).

In contrast with hybrid claims stand "pure" § 301 claims, which are cases brought by a union against an employer. In these cases, the Third Circuit applies the state statute of limitations. *Serv. Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 94-96 (3d Cir. 1992). Pennsylvania law requires that actions "upon a contract, obligation or liability founded upon a writing" must commence within four years. 42 PA. CONS. STAT. § 5525(a)(8) (2006). *See also Storch v. Miller*, 585 A.2d 1173, 1174-75 (Pa. Commw. Ct. 1991) (applying a four year statute of limitations to claims

5

brought under a collective bargaining agreement).

On its face, Price's claim is not a classic hybrid claim. There is no mention of the Union's duty of representation within the four corners of Plaintiffs' Amended Complaint; IUE is not implicated in that document until Count Four, which asserts that "as a result of the Defendant [IUE]'s and Defendant [GCI]'s outrageous conduct, the Plaintiff, Roy R. Price, Jr., has lost the care, comfort and consortium of his wife . . . ." Document No. 16, p. 4. Price makes no allegation against the Union and there is no other indication in the pleadings that her claim is a hybrid claim. GCI asserts, however, that because the Amended Complaint includes the Union as a defendant, "it is reasonable to assume that [Price] is also alleging a breach of the duty of fair representation against the Union." Document No. 18, p. 5 n.4.

This argument is not without some legal support. In *Carrion v. Enterprise Ass'n*, the Second Circuit held that "a union's duty of fair representation includes the union's duty to enforce an arbitration award." 227 F.3d 29, 33 (2d Cir. 2000). Because the plaintiff in *Carrion* claimed that his union had breached the collective bargaining agreement by failing to enforce an arbitral award in his favor, the Court implied an alleged violation of the union's duty of fair representation. The plaintiff's claims were thus hybrid claims and time-barred by the six-month limitations period. The court adopted the Eight Circuit's reasoning that when "the union functions as the individual's exclusive representative, the job of asserting the individual's potential right[s] of action . . . under section 301 is presumed to have been delegated to the union as one of its duties." *Livingstone v. Schnuck Mkt., Inc.*, 950 F.2d 579, 582 (8th Cir. 1991).

As mentioned, the Union's only appearance in the complaint is in Plaintiff Roy Price's claim for lost consortium. There is no allegation that IUE breached any duty it owed Price. The Court therefore has prohibitive difficulty seeing any analogy between this case and *Carrion*. The Court also

6

notes, however, that just as it cannot consider Price's claim to be a hybrid one, neither can it call the allegation a classic pure claim, for it is not an action initiated by a union directly against an employer. *See Serv. Employees Int'l Union*, 982 F.2d at 94 n.2 (3d Cir. 1992) ("A 'pure' section 301 action involves a union suing an employer for breach of a collective bargaining agreement."). Which variety of section 301 claim is most analogous to the one *sub judice* will determine the applicable statute of limitations. If Price's claim more closely relates to a hybrid claim, § 10(b) applies and Count One must be dismissed as untimely.³ However, if it can most accurately be considered a species of pure claim, Price had until November 2008 to file her complaint, and the claim cannot be dismissed solely on the basis of § 10(b).

Central to this inquiry is the Supreme Court's conclusion, as interpreted by the Third Circuit, "that *DelCostello* [is] inapplicable [where a] dispute can have only an indirect impact on the economic relations between a union and an employer and on labor peace." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1294 (3d Cir. 1991) (citing *Reed v. United Transp. Union*, 488 U.S. 319, 330-31, 102 L. Ed. 2d 665, 109 S. Ct. 621 (1989)). In *Brenner*, employees filed, *inter alia*, a section 301 claim against their union and various union officials. The court held that "[b]ecause the present dispute . . . can have no more than an indirect influence on the union's ability to negotiate effectively with . . . employers . . . the rationale behind *DelCostello*'s narrowly circumscribed exception is inapplicable." *Id.* at 1295. The Court relied in part on an Eleventh Circuit case in which the "plaintiff had not brought a hybrid suit, attacked the validity of a collective bargaining agreement, or intermeddled with a settled arbitration award." *Id.* (citing *Pruitt v. Carpenters' Local Union No. 225*,

---

³ While the alleged violation occurred in November, 2004, Price's original complaint was not filed in state court until October, 2005, well after the limitations period ran its course. This also assumes the filing date related back; the Amended Complaint was not filed until January, 2006.

7

893 F.2d 1216 (11th Cir. 1990)). In both *Pruitt* and *Brenner*, the court found that state limitations periods applied because the lawsuit did not implicate the interface between union and employer. *Pruitt*, 893 F.2d at 1221; *Brenner*, 927 F.2d at 1295.

Price states no claim against the Union, she does not attack the result of any arbitral proceeding, and she makes no claim against the collective bargaining agreement itself. Her lawsuit instead rests on the validity of the CBA and seems intended to preempt the administrative remedies that agreement provides her. Though Price's claims necessarily cross the line that divides labor from management, it avoids implicating the relationship between union and employer that federal section 301 common law strives to protect. No allegation that the Union has failed in its duty to its members or that anything irregular has tainted the relationship between IUE and GCI can be reasonably construed from the Amended Complaint. Instead, this is an employee's maverick claim against her employer and does not threaten "the [U]nion's ability to negotiate effectively" with GCI. *Brenner*, 927 F.2d at 1295. Instead, it directly challenges an action taken solely by GCI and most closely resembles a pure action attacking management behavior. Under *Mitchell* and 42 PA. CONS. STAT. § 5525(a)(8), the breach-of-contract claim is thus governed by the state limitations period for claims arising from written contracts, and Price had four years to bring her allegation.

This does not preserve the claim, however. Hybrid claims developed as a means of attacking the arbitral decisions that conclude the grievance processes typically mandated in collective bargaining agreements. In response, the six-month statute of limitations gained traction as a tool for enforcing the federal common law's strong policy favoring the private settlement of labor disputes. *See DelCostello*, 462 U.S. at 168 ("[W]hile application of a short arbitration period as against employers would endanger employees' ability to recover most of what is due them, application of a longer malpractice statute as

8

against unions would preclude the relatively rapid final resolution of labor disputes favored by federal law."). Thus, "a condition precedent to [a] Section 301 action against [an employer] is the legal efficacy of [a plaintiff's] fair representation claim against [her union]." *Hatchigian v. Interface Elec., Inc.*, 142 L.R.R.M. 2335 (E.D. Pa. 1993).

The foundational principle that animates the federal common law of this area is in essence the requirement that claimants first exhaust their administrative remedies before seeking relief from the courts. "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965). *See also Manning v. Bouton*, 678 F.2d 13, 16 (3d Cir. 1982) ("Being bound by the collective bargaining agreement, [plaintiff] was not free to ignore the procedures it specifies for the pressing of grievances by bringing suit in federal court.").

The agreement between GCI and IUE sets forth in detail the procedures that any covered employee with a dispute must follow. Exh. A attached to Document No. 18, pp. 25-27. The grievance procedure outlined in Article X of the CBA culminates in the arbitration provision of Article XI, according to which "[t]he decision of the arbitrator shall be final and binding upon both parties, but either party shall have the right to seek a judicial decision on the sole issue of whether the arbitrator has complied with the requirements of this Article XI." *Id.* at 27. Price asserts in her Amended Complaint that she enjoyed the protections of the CBA. Document No. 16, p. 2. More than that, however, she was also bound to the settlement procedures outlined in that instrument. According to the dictate of *Republic Steel*, any failure to seek redress of her claims against GCI under the CBA would preclude this

9

litigation. Neither Plaintiff's original complaint, nor the Amended Complaint mentions any effort to utilize the CBA's grievance procedures.

The Court's power to *sua sponte* dismiss Plaintiff's breach-of-contract claim under Rule 12(b)(6) is circumscribed by the Third Circuit's admonition that such authority should only be exercised "where appropriate." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 n.15 (3d. Cir. 2002) (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 430 n.5 (3d Cir. 1990)). Ordinarily, the Court would be reluctant to dismiss Price's claim without providing her an opportunity to address an issue raised for the first time in this Memorandum Opinion. An order to show cause as to why Count One should not be dismissed for failure to exhaust administrative remedies might be customary. However, for the same reason that Price eludes the six month statute of limitations, she also demonstrates that her lawsuit against GCI could never survive a motion to dismiss.

The statutory period of § 10(b) was inapplicable to this case because Price's suit was more analogous to a pure section 301 case than a hybrid claim: she was suing her employer directly, with no allegation that her union breached its duty of fair representation and no attempt to collaterally attack an arbitral proceeding. In doing, so, however, Price failed to meet the "condition precedent" of a section 301 claim, and her breach-of-contract action cannot survive. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues [the employer], the [union], or both." *DelCostello*, 462 U.S. at 164. Thus, anytime a covered employee attacks her termination under a collective bargaining agreement, she may not do so without alleging some failure in the process mandated by the CBA itself. Even if Price could demonstrate to the Court that she had exhausted her administrative remedies, her claim against GCI would be barred by her failure to allege any violation of the Union's duty of fair representation. But by alleging some violation of that duty,

10

Price would trigger § 10(b) and her claim would be untimely for being filed after six months had lapsed.[4] The breach-of-contract action cannot survive GCI's 12(b)(6) motion, not because the six-month statute of limitations governs, but because that limitation would govern if Price had complied with the demands of applicable law and properly pleaded her complaint.

For these reasons, there are no circumstances under which the Court could possibly grant relief on Price's breach-of-contract claim against her previous employer, and GCI's motion to dismiss that claim must be granted with prejudice.

### B. Wrongful Termination

In addition to the breach-of-contract claim, Count One of the Amended Complaint also states that GCI wrongfully terminated Price's employment. Document No. 16, pp. 2-3. The Court finds no reason to conclude that the foregoing analysis concerning the breach-of-contract claim does not also apply to the allegation of wrongful termination. While Pennsylvania law recognizes a claim for wrongful termination, the centrality of a CBA to such a claim necessitates section 301 preemption. In *Rocker v. Harvey Co.*, the Pennsylvania Superior Court addressed a factual scenario identical to the one *sub judice*:

> In the present case, [the employee's] assertion that he has been wrongfully discharged can only be based on the provisions of the collective bargaining agreement, which modifies the traditional common law rule that an employment contract is terminable at will by either party. The source of appellant's right not to be discharged, the breach

---

[4] The Court notes that in some instances, the grievance procedures set forth in a CBA are not the exclusive remedy available to the parties. In such cases, the duty to exhaust is not necessarily mandatory. *Republic Steel*, 379 U.S. at 657-57. Courts have recognized other exceptions to the duty to exhaust, such as when "the union wrongfully refuses to process the employee's grievance, . . . the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract, . . . or exhaustion of contractual remedies would be futile." *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978). The Court finds that the *Rabalais* exceptions would all give rise to a claim against the union for violating its duty of fair representation, and that the CBA between GCI and IUE meant its grievance procedures to be the exclusive remedy for covered employees. *See* Exh. A attached to Document No. 18, p. 25 ("The Union specifically agrees that the Grievance Procedure as described in this Article shall be the only method available for adjusting employee complaints.").

11

> of which would entitle him to damages for wrongful discharge, stems from the collective bargaining agreement between the union and [the employer]. Consequently, [the employee's] claim that he was unlawfully discharged . . . necessarily involves construction of the provisions of the collective bargaining agreement to determine which party's interpretation is correct. Because the question presented in this suit implicates the precepts of federal labor policy, we turn now to the federal substantive law which lays out that policy.

535 A.2d 1136, 1139 (Pa. Super. Ct. 1988). Price's wrongful-termination claim therefore suffers the same shortcomings that afflict her breach-of-contract claim. Moreover, wrongful-termination claims are also subject to a requirement that plaintiffs first exhaust their administrative remedies. "Failure to exhaust the remedies provided in the collective bargaining agreement may be a valid defense to a suit brought by an employee against his employer for wrongful discharge." *Id.* (citing state and federal cases).

There is no indication before the Court that Price made any effort to bring a grievance for wrongful termination through the procedures set forth in the CBA. Furthermore, the Court finds that any attempt to amend this claim would necessitate at least an implied claim against the Union for failing to fairly represent Price; the claim would then become time-barred under § 10(b). *See supra*, Section II.B. Accordingly, the Court must also grant with prejudice GCI's motion to dismiss Plaintiff's claim for wrongful termination.

### C. Discrimination

In her second count, Price states a claim of discrimination and alleges that GCI terminated her employment because she is female. Document No. 16, p. 3. Regardless of whether this claim is preempted under section 301, federal jurisdiction could be based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. However, equality is also an area where judicial jurisdiction is tempered by a predilection for administrative settlement, and both the state and federal governments

have established statutory apparatuses to screen legal claims. In Pennsylvania, the Pennsylvania Human Relations Act ("PHRA") requires that a complaint alleging discrimination must be "filed within one hundred eighty days after the alleged act of discrimination." 43 P.S. § 959(h); *Burgh v. Borough Council of Montrose*, 251 F.3d 465 (3d Cir. 2001); *Uber v. Slippery Rock Univ. of Pa.*, 887 A.2d 362 (Pa. Commw. Ct. 2005). According to federal law, Title VII claimants must file a claim with the EEOC within 180 days of the adverse employment action. If the claimant chooses to first file a claim with an analogous state agency, that limitations period is extended to 300 days from the adverse action. 42 U.S.C. § 2000e-5(e)(1); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471-74 (3d Cir. 2001). A claimant then has 90 days from the disposition of the administrative claim to bring a lawsuit. 42 U.S.C. § 2000e-5(f)(1). The filing and exhaustion requirements, however, are not jurisdictional, and "are subject to waiver, estoppel and equitable tolling principles." *Communs. Workers of Am., Local 1033 v. N.J. Dep't of Pers.*, 282 F.3d 213, 216-17 (3d Cir. 2002) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)).

The Amended Complaint makes no mention of Price having followed any of the administrative procedures that must precede a suit for gender discrimination. Additionally, Price did not bring her discrimination charge in any forum until–at the earliest–well after either time frame under the PHRA or Title VII had lapsed. Though it is within the Court's equitable powers to toll the limitations period of a discrimination claim, Price has not asked the Court to do so and she has not made any allegation consistent with the grounds that commonly justify such action. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (finding that tolling can be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the

plaintiff has timely asserted his or her rights mistakenly in the wrong forum").

GCI's objection to Price's discrimination claim on exhaustion grounds was a central part of its first motion to dismiss. Document No 7, pp. 8-9. Plaintiffs were therefore on notice of the deficiencies in their initial pleading that they were expected to cure. Their patent failure to do so in the Amended Complaint compels the Court to grant GCI's motion and dismiss Price's second count with prejudice for failing to state a claim upon which relief can be granted.

### D. State Law Claims

The preemptive powers of Section 301 can reach beyond claims requiring the direct interpretation of a CBA. "If the policies that animate § 301 are to be given their proper range, . . . the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). *See also Myers v. AK Steel Corp.*, 156 Fed. Appx. 528, 530 (3d Cir. 2005) (nonprecedential opinion) ("Section 301 also encompasses state claims that require the application and interpretation of collective bargaining agreements."). The Third Circuit follows the rule in *Allis-Chalmers* that a "state-law tort claim is preempted by § 301 only if its resolution is 'substantially dependent upon analysis of the terms of a collective bargaining agreement.'" *Berda v. CBS, Inc.*, 881 F.2d 20, 26-27 (3d Cir. 1989) (quoting *Allis-Chalmers*, 471 U.S. at 210). Under the analysis in *Berda*, the preemption of state law tort claims is determined by analyzing whether the elements of those claims require any reference to the relevant CBA. *Id.* at 27.

The analysis below establishes that neither Price's claim for emotional distress, nor her husband's claim for lost consortium require the court to make any reference to the collective bargaining agreement. Even if Plaintiffs' remaining claims are not preempted, however, the Court could assert its

14

authority to decide them under the doctrine of supplemental jurisdiction contained in 28 USCS § 1367(a). Alternatively, the Court may decline such jurisdiction if it dismisses all claims over which it possessed original jurisdiction. 28 USCS § 1367(c)(3). Indeed, in the Third Circuit, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

The Court finds that Plaintiff's Amended Complaint is so anemically pleaded that to not dismiss the remaining state claims in this Memorandum Opinion would waste the resources of the state judiciary, unnecessarily delay the complete resolution of this lawsuit, and create needless expense for the parties involved. Because of the clarity of applicable state laws and the evident deficiencies of the Amended Complaint, the Court finds that it is justified in retaining jurisdiction over Counts III and IV. As the following analysis establishes, those claims must be dismissed with prejudice.

### 1. Emotional Distress

The Pennsylvania Supreme Court has never explicitly adopted § 46(1) of the Restatement (Second) of Torts, which sets forth the requirements of a claim for intentional infliction of emotional distress. Lower courts, however, have permitted claims based on this theory. *See, e.g., Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. Ct. 1989). To the extent that case law establishes elements of the tort, it is clear that recovery depends on the extremity and outrageousness of defendant's conduct: "[T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987).

15

Further,

> [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Daughen v. Fox*, 539 A.2d 858, 861 (Pa. Super. Ct. 1988) (quoting Restatement (Second) of Torts § 46, comment d). *See also Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citing both *Buczek* and *Daughen* with approval).

Count III alleges that "said actions by [GCI] is [*sic*] extreme and outrageous conduct by an employer. . . ." Document No. 16, ¶ 24 (incorporating by reference ¶ 18). GCI's "said actions" are limited to discriminating against Price based on her gender, terminating Price's employment for her medically excused absences, and violating the terms of its agreement with Price's union. Price asserts that this conduct meets the rigorous standard that cases like *Buczek* and *Daughen* have set for intentional infliction of emotional distress claims. Pennsylvania courts have made it clear, however, that as a matter of law, discriminatory and malicious conduct cannot ground an emotional distress claim without something more.

"[I]t is extremely rare to find conduct in the employment context that will give rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).

> In the context of a dismissal, it has been noted that while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for intentional infliction of emotional distress. Moreover, courts applying Pennsylvania law have failed to find conduct outrageous where an employer deceived an employee into foregoing other employment, or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult.

16

*Id.* (quotations and citations omitted). In *Cox*, the plaintiff's ERISA lawsuit stemmed from his discharge and sought additional recovery for emotional distress. The Third Circuit affirmed the lower court's directed verdict on the latter claim. "[Defendant] can only be said to have dismissed Cox with an improper motive and notwithstanding the potential effects on Cox. . . . [Such actions] do not appear to rise to the level of outrageousness which is required under Pennsylvania law." *Id.* at 396.

The Amended Complaint explicitly limits GCI's allegedly extreme and outrageous behavior to conduct less severe than that in *Cox*. The defendant in that case knew Cox had not yet fully recovered from triple-bypass heart surgery. It was also aware that terminating Cox threatened his medical benefits and endangered his chances of finding other employment. *Id.* at 395. Price alleges merely that she was the victim of gender discrimination and wrongful termination. Such treatment does not support a claim for emotional distress. *See Wilkins v. ABF Freight Sys.*, 96 Fair Empl. Prac. Cas. (BNA) 918 (E.D. Pa. 2005) (holding that racial and age discrimination do not constitute intentional infliction of emotional distress); *Handley v. Phillips*, 715 F. Supp. 657 (M.D. Pa. 1989) (finding gender discrimination similarly insufficient).

The Court's conclusion is buttressed by case law indicating that the exclusive remedy for emotional distress is provided by the Pennsylvania Worker's Compensation Act ("PWCA"), according to which "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees . . . on account of any injury [arising in the course of her employment]." 77 PA. CONS. STAT. § 481(a) (2006); *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, (3d Cir. 1997); *Wilkins*, 96 Fair Empl. Prac. Cas. (BNA) 918. Whatever physical or mental injury Price alleges her employment caused, her sole remedy under Pennsylvania law lies with the state's administrative compensation scheme. Even if Price meant only to allege that her emotional distress was

17

negligently inflicted, the PWCA would still foreclose the result she seeks.

These defects in Price's claim for emotional distress preclude any finding that she is entitled to discovery. The Amended Complaint presents for a second time the same flaws that led to the initial dismissal of Count III. GCI's motion is therefore granted with prejudice, and Price will not be allowed to amend her complaint.

### 2. Loss of Consortium

The only remaining issue is Plaintiff Roy Price's claim for lost consortium. Recovery on such a basis is disallowed when the injury from which the lost consortium derives is to the civil rights of the claimant's spouse. *Quitmeyer v. Se. Pa. Transp. Auth.*, 740 F. Supp. 363, 370 (E.D. Pa. 1990). Accordingly, Plaintiff Roy Price can only plead his claim in conjunction with Price's tort allegations.

Pennsylvania law also states clearly that a plaintiff alleging loss of consortium must correlate his claim to the defendant's liability for his spouse's injury. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (holding that "under Pennsylvania law the success of a derivative claim is 'always dependent upon the injured spouse's right to recover'" (quoting *Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 554 (Pa. Super. Ct. 1985))); *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986) (holding that no compensation for lost consortium was available where the defendant was not liable for the spouse's tort claims); *See also Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 482 (M.D. Pa. 2002) (dismissing a derivative consortium claim where the claims of the injured spouse had been dismissed). "This is because of the well established rule that the husband's rights are only derivative of those of his wife." *Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. Ct. 1971) (citing *Elser v. Union Paving Co.*, 74 A. 2d 529, 530 (Pa. Super. Ct. 1950)) (ordering a new trial where the injured wife recovered nothing but the jury awarded her husband damages for expenses incurred while

18

she recovered). Where a defendant is not liable for the principal tort, Pennsylvania law sensibly protects it from any derivative liability.

Having dismissed with prejudice all of Price's claims against GCI, the Court is bound by state law to disallow Plaintiff Roy Price's claim against that defendant for lost consortium. For that reason, and because Price's claims were all dismissed with prejudice, Count IV of the Amended Complaint must also be dismissed with prejudice as to defendant GCI.

### III. IUE's Motion to Dismiss

For the same reason his claim against GCI must be dismissed, Plaintiff Roy Price's consortium claim against the Union cannot stand; there are no circumstances under which IUE could be liable for any of Price's injuries. Firstly, all of Price's claims have been dismissed with prejudice. Secondly, Price never made any allegation against IUE in either of the two complaints. Counts One, Two, and Three are all made exclusively against GCI. If Plaintiffs were unaware of this legal defect in their pleadings, IUE's motion to dismiss the original complaint certainly put them on notice. Document No. 13, pp. 2-3. Nonetheless, Plaintiffs failed to exploit the opportunity to correct their deficient pleading provided by the Court's Order granting leave to amend (Document No. 15). Therefore, the Court cannot sustain Roy Price's claim for lost consortium in part for the same reason it could not do so before: Failure to allege IUE's liability for Price's injuries estops any allegation of the Union's liability for derivative injuries. Accordingly, IUE's motion to dismiss is granted with prejudice.

Because the Court finds that Plaintiffs' Amended Complaint fails to state any claim upon which relief could be granted, and because that pleading represented Plaintiffs' second opportunity to set forth any allegation that might merit further investigation, the Amended Complaint is dismissed with prejudice in its entirety.

An appropriate order follows.

**AND NOW**, this 29th day of September, 2006, after consideration of the Defendants' motions to dismiss (Document Nos. 19 & 20) and in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that:

1) Defendant General Cable Industries, Inc.'s Motion to Dismiss (Document No. 19) is **GRANTED WITH PREJUDICE**; and

2) Defendant International Union of Electronic, Electrical, Salaried Machine and Furniture Workers of America's Motion to Dismiss (Document No. 20) is **GRANTED WITH PREJUDICE**; and

3) Plaintiffs' Amended Complaint (Document No. 16) is **DISMISSED WITH PREJUDICE**. Plaintiffs are not granted leave to file an amended complaint.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

Cc: **All counsel of record.**